RECORD NO. 15-1349

IN THE

# United States Court of Appeals
FOR THE FOURTH CIRCUIT

BONNIE J. MAYO,

*Plaintiff-Appellant,*

v.

WELLS FARGO BANK, N.A.,

*Defendant-Appellee,*

And

FEDERAL HOME LOAN MORTGAGE CORPORATION,

*Defendant-Appellee,*

And

SAMUEL I. WHITE, P.C.,

*Defendant-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## OPENING BRIEF OF APPELLANT

Christopher E. Brown, Esq.
The Brown Firm PLLC
526 King Street, Suite 207
Alexandria, VA 22314
Tel: 703.924.0223
Fax: 703.997.2362

Hunter W. Sims, Esq.
Christy L. Murphy, Esq.
KAUFMAN & CANOLES, PC
150 West Main Street, Suite 2100
Norfolk, VA 23510
Tel: 757.624.3000
Fax: 888.360.9092

*Attorney for Appellant
Bonnie Mayo*

*Attorneys for Appellees Wells Fargo
Bank, N.A., Federal Home Loan
Mortgage Corporation, and Samuel I.
White, P.C.*

# RULE 26.1 STATEMENT

Bonnie J. Mayo is an individual Plaintiff and is not a publicly held entity or corporate organization.

 

 

                                              _____/s/_____

Date:   June 1, 2015                Christopher E. Brown, Esq. VSB#39852
                                                The Brown Firm PLLC
                                                526 King Street, Suite 207
                                                Alexandria, VA 22314
                                                Tel: 703.924.0223
                                                Fax: 703.997.2362
                                                cbrown@brownfirmpllc.com

# TABLE OF CONTENTS

**Page**

RULE 26.1 STATEMENT ...................................................................i

TABLE OF CONTENTS....................................................................ii

TABLE OF AUTHORITIES ............................................................iv

JURISDICTION STATEMENT.........................................................1

ISSUES PRESENTED FOR REVIEW ..............................................2

STATEMENT OF CASE ...................................................................3

    A. NATURE OF CASE ...............................................................3

    B. COURSE OF PROCEEDINGS .............................................8

STATEMENT OF FACTS ...............................................................11

    A. PARTIES .............................................................................11

    B. FACTS .................................................................................12

SUMMARY OF ARGUMENT ........................................................17

STANDARD OF REVIEW ..............................................................17

    APPEAL OF GRANT OF 12(B)(6) MOTION TO DISMISS......17

    APPEAL OF JUDGMENT IN FAVOR OF DEFENDANTS ......18

ARGUMENT .....................................................................................18

    Introduction ……………………………………………… 18

    Count I & IV (ISSUE 1, 4 & 5)………......................................19

    Count II (ISSUE #2) ……………………………………..…… 29

    Count V (ISSUE #3) …………………………………………... 30

**TABLE OF CONTENTS**

**Page**

CONCLUSION ...................................................................................31

REQUEST FOR ORAL ARGUMENT ................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Branch v Buckley,
  65 S.E. 652, 655 (Va. 1909) ............................................................ 8

Bremer v. Bitner,
  44 Va. Cir. 505 (Va. Cir. Cr. 1996) ............................................. 30

Estate Const. Co. v. Miller & Smith Holding Co., Inc.,
  14 F. 3d 213, fn 10 (4th Cir. 1994) .......................................... 5, 19

Everett v. Woodward,
  162 Va. 419, 426, 174 S.E. 864 (Va. 1934) ................................. 26, 27, 28

Filak v. George,
  267 Va. 612, 619, 594 S.E.2d 610 (2004) .................................... 20

First Funding Corp. v. Birge,
  220 Va. 326, 333, 257 S.E.2d 861, 865 (1979) ........................... 28

Franks v. Ross,
  313 F.3d 184, 192 (4th Cir. 2002) ................................................ 18

Frazer v. Millington,
  475 S.E.2d 811, 252 Va. 195 (Va., 1996) ................................. 5, 23

GE Inv. Private Placement Partners II v. Parker,
  247 F.3d 543, 548 (4th Cir. 2001) ............................................... 17

Glidewell v. Murray-Lacy,
  124 Va. 563, 98 S.E. 665, 668 (1919) ......................................... 31

Harris v. McKay,
  122 S.E.2d 137, 140 (Va. 1924) .................................................... 19

Hudson v. Barham,
  101 Va. 63, 67, 43 S.E. 189, 190 (1903) ..................................... 30

In re Krohn,
  203 Ariz. 205, 52 P.3d 774 (Ariz., 2002) ................................. 6, 23

iv

# TABLE OF AUTHORITIES

**Page(s)**

In re: Ron Wilson, LaRhonda Wilson,
U.S. Bankruptcy Court for the Eastern District of Louisiana
Case no. 07-11862, Motion for Sanctions Granted
Memorandum Opinion at page 21 ................................................................ 30

Liva v. County of Lexington,
972 F.2d 340 (C.A.4 (S.C.), 1992) ................................................................. 6

Little v. Ward,
458 S.E.2d 586, 590, 250 Va. 3, 10  (Va., 1995) ......................................... 29

Matanic v. Wells Fargo Bank, N.A.,
No. 3:12cv472, 2012 WL 4321634 (E.D. Va. Sept. 19, 2012) ................... 24

Mathews v. PHH Mortgage,
724 S.E.2d 196, 200-201 (Va., 2012)  ......................................... 21, 22, 24, 26

Morriss v. Va. State Ins. Co.1,
18 S.E. 843, 90 Va. 370 (Va., 1893) ............................................................. 30

Mullins v. Sanders,
189 Va. 624, 54 S.E.2d 116, 122 (1949)  ...................................................... 32

Mylan Labs., Inc. v. Matkari,
7 F.3d 1130, 1134 (4th Cir. 1993)  ................................................................ 18

Nitrophosphate Syndicate v. Johnson,
100 Va. 774, 42 S.E. 995, 996 (Va. 1902) .................................................... 19

Piedmont Bank v. Hatcher,
94 Va. 229, 26 S. E. 505 (Va., 1897) .............................................................. 7

Preferred Sys. Solutions, Inc. v. GP Consulting, LLC,
732 S.E.2d 676 (Va., 2012).............................................................................. 21

Roanoke Cement Co. v. Falk Corp.,
413 F.3d 431, 433 (4th. Cir. 2005) ................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

Rector v. Approved Federal Savings Bank,
  265 F.3d 248, 255 (4th Cir., 2001) ............................................................. 23

RW Power Partners, L.P., v. Va. Elec. & Power Co.,
  899 F.Supp. 1490, 1496 (E.D. Va. 1995) ...................................................... 19

Schmidt & Wilson v. Carneal,
  164 Va. 412, 180 S.E. 325, 326 (1935) ........................................................ 29

Turk v. Clark,
  193 Va. 744, 749-750, 71 S.E.2d 172, 176 (1952) ....................................... 28

Walt Robbins, Inc. v. Damon Corp.,
  232 Va. 43, 47, 348 S.E.2d 223, 226 (Va., 1986) ........................................ 18

Williams v. First Fed. Sav. & Loan Ass'n,
  651 F.2d 910, 926 (4th Cir.1981) ............................................................. 6, 25

Wills v. Chesapeake Western Ry.,
  178 Va. 314, 320, 16 S.E.2d 649, 652 (1941) ........................................ 28, 29

Wilson v. Draper & Goldberg, P.L.L.C.,
  443 F.3d 373, 376 (4th Cir., 2006) .............................................................. 30

## RULES

VA Code §55-59 .................................................................................................. 5
VA Code §55-59.1 ............................................................................................. 13

## VIRGINIA CONSTITUTION

VIRGINIA CONSTITUTION, ARTICLE I, §1 ............................................... 4, 17

VIRGINIA CONSTITUTION, ARTICLE I, §11 ............................................. 4, 17

## ARTICLES

*Rule of Law: The Great Foundation of Our Constitution*
  Matthew Spalding, 08/11/10 .............................................................. 3

vi

## JURISDICTION STATEMENT

### *District Court Subject-Matter Jurisdiction*

The U.S. District Court for the Eastern District of Virginia (Newport News Division) had subject-matter jurisdiction. The cause of action filed by Plaintiff concerned her home, located in the county of York, Virginia, where she resides. The initial cause of action concerning the foreclosure of her home was brought against Wells Fargo Bank, N.A. (a national bank charted in Sioux Falls, South Dakota), Federal Home Loan Mortgage Corporation (a government sponsored entity), and Samuel I. White, P.C. (limited liability corporation existing and organized under the laws of the Commonwealth of Virginia). Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") removed this cause of action from the Circuit Court for York County / Poquoson, Virginia, to the Eastern District of Virginia (Newport News Division) pursuant to 12 U.S.C. § 1452 (f) because Freddie Mac is to be considered a federal agency for purposes of removal and may remove an action to which it is a party "at any time before trial." 12 U.S.C. § 1452 (f). (J.A. at 9). Wells Fargo Bank, N.A. ("Wells Fargo") and Samuel I. White, P.C. ("SIW") consented to removal. (J.A. at 9).

*Fourth Circuit Subject-Matter Jurisdiction*

The district court's Orders of April 11, 2014 and March 4, 2015 disposed of all of parties' claims.  (J.A. at 403 and 651).  Plaintiff-Appellant timely filed her Notice of Appeal on April 2, 2015, appealing the court's Orders of April 11, 2014 and March 4, 2015. (J.A. at 666).   This timely filed appeal was docketed on April 6, 2015.  This court has jurisdiction over this appeal.

## ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred in granting the Motion to Dismiss Count I in part, on the basis that Plaintiff had conflicting assertions in her Amended Complaint concerning whether Wells Fargo was authorized to foreclose, ie exercise a power in the deed of trust.

2.     Whether the district court erred when granting the Motion to Dismiss as to Count II, on the basis that The Amended Complaint's allegation that the White firm violated a common law duty of impartiality was conclusory.

3.     Whether the district court erred when granting the Motion to Dismiss as to Count V on the basis that Plaintiff failed to provide specific facts to support the claim that would raise a plausible inference of abuse of process.

4.     Whether the district court erred in entering Judgment in favor of the Defendants on Count I – Breach of Contract, on the basis that the acceleration notices substantially complied with the requirements of the Deed of Trust.

5.     Whether the district court erred in entering judgment in favor of the Defendants on Count IV – Equitable Action to Rescind Foreclosure, on the basis that there was on breach of contract and the Court was not satisfied that Virginia law recognizes a stand-alone cause of action for wrongful foreclosure.

2

## STATEMENT OF THE CASE

### A. Nature of the Case

The rule of law may be the most significant and influential accomplishment of Western constitutional thinking .. [N]owhere expressed yet evident throughout the Constitution, this bedrock concept is the first principle on which the American legal and political system was built.

Throughout most of human history, the rules by which life was governed were usually determined by force and fraud: he who had the power—whether military strength or political dominance—made the rules. The command of the absolute monarch or tyrannical despot was the rule and had the coercive force of the law. Rulers made up false stories of inheritance and rationalizations such as "divine right" to convince their subjects to accept their rule without question. This is still the case in many parts of the world, where the arbitrary rulings of the dictator are wrongly associated with the rule of law.

*Rule of Law: The Great Foundation of Our Constitution*, Matthew Spalding, 08/11/10.[1]

It is a fundamental principle that one has the right to protect his or her property from its' unlawful taking by another.  Consistent with the United States Constitution, the Virginia Constitution states:

> [A]ll men are by nature equally free and independent and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity; namely, the enjoyment of life and liberty, with the means of acquiring and possessing property, and pursuing and obtaining happiness and safety.

---

[1] http://www.firstprinciplesjournal.com/articles.aspx?article=1434&loc=r/

VA CONST., Article I, §1.  It further states that "no person shall be deprived of his life, liberty, or property without due process of law." VA CONST. Article I, §11.  As expressly stated by the Virginia Supreme Court in a case which involved a petition for judicial sale to enforce a mechanic's lien:

> ... in our view, the issue is controlled by principles of due process of law.  'It is fundamental, of course, that no person may be deprived of his property without due process of law.  Finkel Products v. Bell, 205 Va. 927, 931, 140 S.E.2d 695, 698 (1965))(footnote 3 omitted).

Walt Robbins, Inc. v. Damon Corp., 232 Va. 43, 47, 348 S.E.2d 223, 226 (Va., 1986).  The federal government, the states, and the courts of all levels, have the daunting task of protecting the property rights of citizens from theft, conversion, fraud, and otherwise unlawful "takings."  One's property rights can be protected through criminal proceedings, through civil proceedings, and sometimes both.  This is a civil action filed to protect Mayo's property rights from the unlawful taking of those rights by Wells Fargo.  Mayo has a property right in her home and she wishes to defend it, has a constitutional right to defend it, and the contract gives her the express right to raise any defense – in this case, that Wells Fargo has no authority to take her home.  This is a constitutional due process defense which she cannot be denied – yet, the Court denied her the right to challenge the Defendants' right to take her Property (to the extent that state action is required, that is the state action giving rise to the constitutional argument).

Virginia is a non-judicial foreclosure state. And "Virginia provides comprehensive avenues of attack for debtors seeking to set aside foreclosure sales: the deeds of trust themselves; an entire article of the Virginia Code, VA.CODE ANN. Secs.55-58 to 55-66.6; and the common law." Estate Const. Co. v. Miller & Smith Holding Co., Inc., 14 F. 3d 213, fn 10 (4th Cir. 1994). Its foreclosure "law" is established by VA Code §55-59, which provides rules governing deeds of trust "unless otherwise provided [in the deed of trust]." All necessary terms are provided in the Mayo Deed of Trust, thus its terms control – thus foreclosure law with respect to this Deed of Trust is governed by the contract (the Deed of Trust is a contract). The contract, at ¶22, says the Lender may invoke the power of sale, and at ¶24 says the Lender may appoint a substitute trustee. Further, at ¶16(c) is defines the word "may" as giving *sole discretion*. Having established the terms of the contract, actions taken to enforce it must conform precisely to the trust document. Frazer v. Millington, 475 S.E.2d 811, 252 Va. 195 (1996). The Arizona Supreme Court, *en banc*, stated this principle as follows:

> A mortgage generally may be foreclosed only by filing a civil action while, under a Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of court with no necessity of judicial action. The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower.

<u>In re Krohn</u>, 203 Ariz. 205, 52 P.3d 774 (Ariz., 2002). Per the contract, only the Lender, or its successor, may invoke the power of sale. Not Wells Fargo as servicer. Not Freddie Mac as securitizer. Only the lender – the entity that owns the loan (an as of yet unidentified real estate mortgage investment conduit).

While the testimony at trial of the representative of Wells Fargo was clear that the Defendants do now know who owns the Mayo loan / note, the Defendants repeatedly committed fraud on the court in their pleadings and representations. And "[o]nce a litigant chooses to practice fraud, that misconduct infects his cause of action, in whatever guises it may subsequently appear." <u>Liva v. County of Lexington</u>, 972 F.2d 340 (C.A.4 (S.C.), 1992)(dismissal of plaintiff's suit upheld given fraud). And "[L]enders are not favored creatures of the law, at least as compared to borrowers. They must dot the "i"s and cross the "t"s." <u>Williams v. First Fed. Sav. & Loan Ass'n</u>, 651 F.2d 910, 926 (4th Cir.1981).

> Whenever the thing that is wrong represents an attempted unfair advantage to the lender, the courts, not just in Virginia, but throughout the United States, seek to achieve justice by denying to the usually economically superior lender, with presumably the better bargaining position, other advantages in the package of provisions in the deed of trust concerning acceleration.

<u>Williams v. First Fed. Sav. & Loan Ass'n</u>, 651 F.2d 910, 925 (4th Cir.1981). Unfortunately, since the financial crisis the financial institutions have been granted great deference by courts accepting self-serving hearsay statements concerning ownership of negotiable instruments and the right to foreclose. And as stated by the

Honorable Judge Magner of the New Orleans Bankruptcy Court, "[T]he deference afforded the lending community has resulted in an abuse of trust" (In re: Ron Wilson, LaRhonda Wilson, U.S. Bankruptcy Court for the Eastern District of Louisiana, case no. 07-11862, Motion for Sanctions Granted, Memorandum Opinion at page 21). As in the instant case, when fraud is committed, that deference should be abandoned (in truth, it should never be present).  And,

> [L]arge latitude is always given to the admission of evidence where the issue is fraud. ... Although the general rule is that the holder of a negotiable note, regular upon its face, is presumed to have acquired it before maturity, for value, and without notice of any infirmity in the paper, yet if the maker-or party primarily liable for its payment, or any party bound by the original consideration, proves that it was obtained by fraud or illegality in its inception, or if the circumstances raise a strong suspicion of fraud or illegality, the burden of proof is shifted, and the holder of the note must show that he acquired it bona fide for value, in the usual course of business, while current, and under circumstances which create no presumption that he knew of the facts which impeach its validity.

Piedmont Bank v. Hatcher, 94 Va. 229, 26 S. E. 505 (Va., 1897)(internal citations omitted)(emphasis added).  The testimony at trial revealed "circumstances that raise a strong suspicion of fraud of illegality," thus the burden of proof [would have if this claim was not dismissed on 12b6] shifted to the Defendants, Wells Fargo and Freddie Mac, to prove the Mayo note was acquired bona fide for value, presumably by clear and convincing evidence given said fraud: "[w]hen the [ ] transaction is infected with fraud, the confirmation of it, as was said by [the VA Sup Ct] in Wilson

7

v. Carpenter, 91 Va. 183, 192, 21 S. E. 243, 50 Am. St. Rep. 824, is so inconsistent with justice, and so likely to be accompanied by imposition, that courts watch it with the utmost strictness, and *do not allow it to stand but upon the clearest evidence*." Branch v Buckley, 65 S.E. 652, 655 (Va. 1909)(emphasis added).

### B. Course of Proceedings

This is an appeal by Plaintiff / Appellant Bonnie J. Mayo of the Orders of the Honorable Raymond A. Jackson of the Eastern District of Virginia, entered on April 11, 2014 and March 4, 2015. (J.A. at 403 and 651).

The Second Amended Complaint asserted seven (7) counts, and Counts I, II, IV and V are before this Court on appeal.

Appellees Wells Fargo, Freddie Mac and SIW filed a 12(b)(6) Motion to Dismiss the Second Amended complaint for failure to state a claim and a Memorandum in Support on January 9, 2014. (J.A. at 3).

Appellant filed a Response in Opposition to Appellees' Motion to Dismiss on January 23, 2014. (J.A. at 3).

Appellees Wells Fargo, Freddie Mac and SIW filed a Rebuttal in Support of their 12(b)(6) Motion to Dismiss the Second Amended complaint for failure to state a claim and a Memorandum in Support on January 28, 2014. (J.A. at 3).

The District Court granted the Motion to Dismiss as to all Counts except Counts I (in part) and IV (J.A. at 403).

8

A bench trial was held on November 18, 2014 (Dkt#62 – minute entry of proceedings). Following the trial the District Court directed the partiers to file post-trial briefs. On March 4, 2015, the District Court issued an opinion finding in favor of the Defendants on Counts I and IV (J.A. at 651).

### 1.  Judge Raymond A. Jackson's April 11, 2014 Order

On April 11, 2014, the district court granted in part and denied in part Appellees' Motion to Dismiss. The court dismissed Count II (Breach of Fiduciary Duty) and Count V (Abuse of Process)(Count III was withdrawn by Plaintiff). The district court dismissed in part and denied in part Appellees' Motion to Dismiss as to Count I and denied the Motion to Dismiss as to Count IV (Equitable Action to Rescind). (J.A. at 403).

The District Court dismissed Count I as to the allegation there was no default because the Deed of Trust, in contrast to the Real Estate Settlement Procedures Act, states that the failure to pay escrows can result in default and the lender may foreclose (RESPA says the lender must provide 90 days to pay the arrears).

The District Court dismissed Count I as to the allegation that the proper party was not acting because the Amended Complaint in some places says Wells Fargo was acting as agent of the true lender, and in others it says it was not acting as agent of the lender. The District Court denied the Motion to Dismiss as to Count I as to the allegation that the acceleration notice did not strictly comply with the Deed of

Trust, stating the Court would require further evidence to determine if the breach was material or immaterial, noting both can serve as the basis of a breach of contract claim.

The District Court dismissed Count II, on the basis that The Amended Complaint's allegation that the White firm violated a common law duty of impartiality was conclusory.

Count III was withdrawn by Mayo.

The District Court dismissed Count V on the basis that Plaintiff failed to provide specific facts to support the claim that would raise a plausible inference of abuse of process.

**2.  Judge Raymond A. Jackson's March 4, 2015 Order**

On March 4, 2015 the district court, after bench trial, entered judgment in favor of Appellees. (J.A. at 651).

The District Court found in favor of the Defendants on Count I as it found the language of the acceleration notices substantially complied with the deed of trust requirements.

The District Court found in favor of the Defendants on Count IV as it found there was on breach of contract and the Court was not satisfied that Virginia law recognizes a stand-alone cause of action for wrongful foreclosure.

## STATEMENT OF FACTS

### A. Parties

Appellant, Bonnie Mayo (hereinafter "Mayo"), was the owner of the Property, subject to a deed of trust lien securing repayment of the debt (J.A. at 15-16; Am. Compl. ¶¶1, 6-7).

Defendant/Appellee Wells Fargo Bank, N.A. was the servicer of the loan (J.A. 235, Am. Compl. ¶39). Wells Fargo (or its agent SiW) repeatedly asserted that it was the secured party to whom the debt was owed (J.A. 233, Am. Compl. ¶¶25-27, 30), and during the course of the proceedings continued that false assertion numerous times (See J.A. 607-609, "Facts Revealing Fraud on the Court" at p. 4 of Plaintiff's Post-Trial Brief, ¶¶22-33.

Defendant/Appellee Federal Home Loan Corporation ("Freddie Mac") was the assignee of the Property following Wells Fargo's purchase thereof at the foreclosure sale (J.A. 234, Am. Compl. ¶¶32-35). Wells Fargo at trial stated that it sold the loan to Freddie Mac (J.A. 582, Trial Tr. p. 65, line 3 – J.A. 583, Trial Tr. p. 66, line 5).

Defendant/Appellee Samuel I. White, P.C. ("SiW") acted as the trustee under the deed of trust, including for purposes of foreclosure. (J.A. at 47, 49 – Deed of Appointment of Substitute Trustee).

11

**B. Facts**

1.      Plaintiff signed a promissory note and a deed of trust securing its repayment, dated December 30, 2009, which identified Wells Fargo as the Lender (Ps Trial Exhibit 1- Note, and 2 – Deed of Trust).

2.      Wells Fargo originated the loan, shortly after it was sold to Freddie Mac (J.A. 562, Tr. p. 45, line 16-17 – Wiggins testimony).

3.      Wells Fargo was at all times the servicer of the loan (J.A. 553, Tr. p. 36, line 22 – Wiggins testimony).

4.      There came a point in time when Ms. Mayo had a problem with her payments, and her home was foreclosed in June of 2011 (J.A. 527, Tr. p. 10, line 6-11).

5.      The Deed of Trust states that "Lender shall give notice to Borrower prior to acceleration."  The notice shall specify certain things and "shall further advise the borrower of … the right to ring a court action to assert any []defense to acceleration and sale." (P's Trial Ex 2, Deed of Trust at p. 13, ¶22).

6.      If after giving the above-referenced notice the default is not cured … "Lender at its option *may* require immediate payment in full ... and *may* invoke the power of sale." "If Lender invokes the power of sale, lender or Trustee shall give to Borrower ... notice of sale as required by Applicable Law."  (P's Trial Ex 2, Deed of Trust at p. 13, ¶22)(emphasis added).

12

7.     The Deed of Trust at ¶16 states "the word 'may' gives sole discretion to without any obligation to take any action." (P's Trial Ex 2, Deed of Trust at p. 11, ¶16).

8.     By letter dated August 3, 2010, Wells Fargo (its agent, its counsel, and the trustee to the Deed of Trust – Samuel I. White, P.C.) advised Plaintiff that it was the beneficiary of the Deed of Trust, that it requested that this notice be sent to Plaintiff as required by VA Code §55-59.1(B) to advise her that the original note evidencing the indebtedness was lost, misplaced or destroyed, and was unavailable; that she was in default, and that a sale would be scheduled upon expiration of fourteen (14) days from the notice. (Ps Trial Exhibit 3).

9.     Plaintiff filed for bankruptcy protection in August of 2010 (J.A. 558, Tr. p. 41, line – p. 42, line 2).

10.    That bankruptcy filing was dismissed in May of 2011 (J.A. 559, Tr. p. 42, line 11-13).

11.    Samuel I. White, P.C. ("SiW"), which was acting as counsel for Wells Fargo, as agent for Wells Fargo, and as trustee to the Deed of Trust, then foreclosed on the Property in June of 2011 at the direction of Wells Fargo (See Ps Trial Exhibit 3; Ps Trial Exhibit 4).

12.    The reason Plaintiff did not take a course of action other than bankruptcy is she thought that was the only possible solution (J.A. 561, Tr. p. 44, line 13-15).

13.     Prior to the foreclosure sales in August of 2010 and in June of 2011, Plaintiff never received a notice advising her of the right to bring a court action and raise any defense (J.A. 527, Tr. p. 10, line 12-14).

14.     As reflected in the Trustees' Deed, at the unlawful June 2011 foreclosure sale the high bidder was Wells Fargo.  Wells Fargo then assigned all of its right, title and interest in the property (not the bid) to Federal Home Loan Mortgage Corporation ("Freddie Mac")(Ps Trial Exhibit 4 – Trustees' Deed).

15.     The Trustees' Deed further states "WHEREAS, the Deed of Trust provides that upon default the Trustee, upon request of the creditor(s) secured thereby, may sell the property." (Ps Trial Exhibit 4 – Trustees' Deed, last ¶ on 1st page).  This language is consistent with the Deed of Trust which unequivocally states *only the Lender* may invoke the power of sale (See Facts ¶¶6-7, *supra*).

16.     The high bid by Wells Fargo was $203,344.00 (Ps Trial Exhibit 4 – Trustees' Deed, last ¶ on p. 2).

17.     Plaintiff estimates the value of her home to be about $310,000.00 (J.A. 528, Tr. p. 11, line 1).

18.     Per the testimony of Mr. Wiggins, corporate representative of Wells Fargo, at the time of the foreclosure sale Plaintiff owed $242,411.37 (J.A. 578, Tr. p. 61, line 1-2).  ****Plaintiff stood by her objection to this testimony, as it was hearsay which was solely based on his review of business records, thus it should be disregarded.

It is unclear what, if any, role it played. Objection preserved at J.A. 578, Tr. p. 61, line 4-17; testimony of Wiggins re knowledge of facts testified to at J.A. 579, Tr. p. 62, line 13 – p. 64, line 15).

### *Facts Revealing a Breach of Fiduciary Duty by SiW*

19.     SiW was the trustee under the Deed of Trust (Ps Trial Exhibit 2; J.A. 577, Tr. p. 60, line 10-12; J.A. 585, Tr. p. 68, line 1-2).

20.     SiW was the agent of Wells Fargo with respect to letters sent to Plaintiff (Ps Trial Ex 3).

21.     SiW was counsel for Wells Fargo in the bankruptcy proceedings (J.A. 569, Tr. p. 52, line 15 – p. 53, line 9; Tr. p. 59, line 21 – p. 60, line 6; Tr. p. 67, line 15-25).

### *Facts Revealing Fraud on the Court*

22.     Testimony was given by Brock Wiggins as the corporate representative of Wells Fargo (J.A. 462, Tr. p. 45, line 1-5). Thus he was there "as Wells Fargo" and binds Wells Fargo. Hereinafter Wiggins may be referred to simply as "Wiggins" or "Wells Fargo."

23.     Wiggins reviewed "millions of documents in [the Mayo] case." (J.A. 563, Tr. p. 46, line 11-12).

24.     Wells Fargo testified that it was the servicer of the loan and Freddie Mac was the investor of the loan." (J.A. 462, Tr. p. 45, line 11-12). Wells Fargo originated

the loan and shortly after it went to Freddie Mac as the investor." (J.A. 562, Tr. p. 45, line 15-17). Freddie Mac became the investor of the loan shortly after [Wells Fargo] [originated] the loan." (J.A. 563, Tr. p. 46, line 21-24). The loan was not owned by Wells Fargo once it went to Freddie Mac (J.A. 563, Tr. p. 46, line 25 – p. 47, line 2). Wells Fargo was not the beneficiary of the Deed of Trust (J.A. 567, Tr. p. 50, line 14-16). Also see exchange with the court at J.A. 582, Tr. p. 65, line 3 – 19.

25.     Wells Fargo has no knowledge of whether the note, once sold to Freddie Mac, went into a securitized pool of loans, i.e. whether it was sold to a separate legal entity. (J.A. 582, Tr. p. 65, line 21 – p. 66, line 5). Wells Fargo's testimony reveals that Wells Fargo – after reviewing "millions of documents" - *does not know who owns/ed the Mayo Note.* If Wells Fargo does not know who owned the Mayo Note, then it is impossible for "the creditor secured thereby" to have requested SiW to foreclose (as alleged in the Trustees' Deed – Ps Trial Ex 4), and impossible to determine if the "lender" invoked the power of sale (which only the lender "may" do, per the Deed of Trust).

26.     Clearly, "soon after" it originated the loan it sold it to Freddie Mac, and what happened after that, Wells Fargo does not know.

## SUMMARY OF ARGUMENT

Mayo has a property right in her home. At the core of the Amended Complaint (J.A. 229) is the argument that Wells Fargo had no authority to invoke the power of sale under the Deed of Trust, as it was not the [current] lender (J.A. 606, Am. Compl. ¶¶38, 44, 65, 66, 67, 68, 91, 96; *also see* J.A. 606, ¶15, referencing Plaintiff Trial Exhibit 4 – Trustees' Deed).

Respectfully, the Court's statement that Plaintiff failed to provide specific facts to support the claim that would raise a plausible inference of abuse of process is belied by the clear allegations that SiW was acting at the request of Wells Fargo as the secured creditor when it was clear from communications from SiW that Wells Fargo was *not* the secured creditor, thus not the proper party to invoke the power of sale. Foreclosing on the real property of a Virginia citizen when one has no authority to so act would be an abuse of the non-judicial foreclosure process. Further, Wells Fargo cannot say it was authorized to action behalf of some unidentified investor as it is *unable to identify said unknown investor*.

## STANDARD OF REVIEW

### A. Appeal of Grant of 12(b)(6) Motion to Dismiss

This Court reviews de novo the dismissal of a complaint for failure to state a claim upon which relief could be granted. GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001). Such a motion to dismiss made under

Rule 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In considering such a motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Id. *See also* Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002).

## B. Appeal of Grant of Conclusions of Law

This Court "reviews a judgment following a bench trial under a mixed standard of review; findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). Appellant appeals the District Court's Conclusions of Law with respect to the "substantial compliance" of the acceleration notices. Thus this Court will review the decision of the District Court to enter judgment in favor of the Defendants *de novo*.

## ARGUMENT

### I.    Introduction

Virginia Courts have taken an historically liberal approach to *non-judicial* foreclosures: "In Berlin v. Melhorn, 75 Va. 639, Judge Burks says that: "It may be safely laid down as a general rule, deducible from the authorities, that, after a judicial sale has been absolutely confirmed by the court which ordered it, it will not be set

aside except for fraud, mistake, surprise, or other cause for which equity would give like relief if the sale had been made by the parties in interest, instead of by the court. *But where the objection is to the confirmation, the rule is more liberal*." Nitrophosphate Syndicate v. Johnson, 100 Va. 774, 42 S.E. 995, 996 (Va. 1902)(emphasis added). Contrary to the repeated assertions of HSBC and the position of the district court, and consistent with the above liberal approach, the Fourth Circuit has explicitly stated that "Virginia provides comprehensive avenues of attack for debtors seeking to set aside foreclosure sales: the deeds of trust themselves; an entire article of the Virginia Code, VA.CODE ANN. Secs.55-58 to 55-66.6; and the common law." Estate Const. Co. v. Miller & Smith Holding Co., Inc., 14 F. 3d 213, fn 10 (4th Cir. 1994).

## II.    Count I – Breach of Contract / Count IV – Equitable Action to Rescind (ISSUE #1, #4 and #5)

The act of the agent [Wells Fargo] is the act of the principal [unknown]." Harris v. McKay, 122 S.E.2d 137, 140 (Va. 1924). Yet, the District Court had no evidence upon which it could rely to identify Wells Fargo's principal. Further, the District Court addressed material v immaterial breach in its Memorandum Opinion on the Motion to Dismiss, recognizing that Virginia law recognizes both material and non-material breaches as viable causes of action entailing different remedies and defenses. *See* J.A. 403, p. 12, citing RW Power Partners, L.P., v. Va. Elec. & Power Co., 899 F.Supp. 1490, 1496 (E.D. Va. 1995).

19

In Virginia, "the elements of a breach of contract action are: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach . . ." Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610 (2004).

    *1.*    Legally Enforceable Obligation. Defendants do not contest the existence of a legally enforceable obligation between the parties.

    *2.*    Defendant's Violation or Breach of the Obligation. The existing legal obligation was breached by Wells Fargo (and perhaps Freddie Mac, but even Wells Fargo does not know if Freddie Mac owns the loan or not), as they did not provide a proper Notice of Right to Cure and sold Plaintiff's home at foreclosure. Defendants allege the notice sent "substantially complies."

    *3.*    Injury / Damage Caused by the Breach.  Plaintiff is seeking rescission of the foreclosure sale (discussed in greater detail *infra*).  In the alternative, damages would be the loss of equity in her home – the value of the Property - $310,000.  Normally, the damages would be the difference between the sales price and the amount owed on the Note – however, there was no [admissible] evidence / testimony of the amount owed, and the opportunity to

present such evidence is passed.

*Mr. Wiggins testified the amount owed on the note was $242,411.37, but he stated his testimony was based solely on his review of business records. Thus, those records must come in under an exception to the hearsay rule for that evidence to be admissible. While "the mere failure to introduce corroborating task orders or other documents, while perhaps raising issues of credibility, does not suffice to render the testimony of a corporate representative inadmissible. The only fact relevant to the objection is whether these documents were the sole source of his knowledge of funding." Preferred Sys. Solutions, Inc. v. GP Consulting, LLC, 732 S.E.2d 676 (Va., 2012).

### A. The Terms of the Contract – the Deed of Trust

"A deed of trust is construed as a contract . . . and we consider the words of [a] contract within the four corners of the instrument itself." Mathews v. PHH Mortgage 724 S.E.2d 196, 200-201 (Va., 2012). There is a "presumption that the parties have not used words needlessly." Mathews at 201 (*quoting* PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 358, 626 S.E.2d 369, 372-73 (2006)). And the "trustee's power to foreclose is conferred by the deed of trust. Fairfax County Redevelopment & Hous. Auth. v. Riekse, 281 Va. 441, 445–46, 707 S.E.2d 826, 829 (2011). That power does not accrue until its conditions precedent have been fulfilled." Id. at 199 (*citing* Bayview Loan Servicing, LLC v. Simmons, 275 Va. 114

21

at 121, 654 S.E.2d 898 at 901 (2008)). Further, "[a] lender *must* comply with *all conditions precedent* to foreclosure in a deed of trust even if the borrower is in arrears." Id. (emphases added).

The Mayo Deed of Trust, Ps Trial Exhibit 2, at ¶22 clearly states that the notice of the right to cure "shall" advise the borrower of the right to bring a court action and raise any defense. "These terms are clear and unambiguous and [the Court] contrue[s] them according to their plain meaning." Mathews, at 201 (referencing conditions precedent in the DoT). "Any other interpretation would render these provisions meaningless. [The Court] will not adopt such an interpretation." Id. ("[when] clear and unambiguous [the Court] contrue[s] [terms] according to their plain meaning").

During the trial, Plaintiff, during opening statement, directed the Court's attention to the word "shall", stating the U.S. Supreme Court has stated it carries the meaning of command (*see* J.A. 523, Tr. p. 6, line 15 – p. 7, line 3). That was a reference to an opinion from the Fourth Circuit citing several opinions from the U.S. Supreme Court:

> As the United States Supreme Court has noted time and again, "[t]he word `shall' is ordinarily `the language of command." Alabama v. Bozeman, 121 S. Ct. 2079, 2085 (2001) (citing Anderson v. Yungkau, 329 U.S. 482, 485 (1947) (quoting Escoe v. Zerbst, 295 U.S. 490, 493 (1935))). In Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), the Court observed that "the mandatory`shall' . . . normally creates an

obligation impervious to judicial discretion." Id. at 35 (citing Anderson).

Rector v. Approved Federal Savings Bank, 265 F.3d 248, 255 (4th Cir., 2001). The language is clear, and the use of the word shall is the language of command and normally is impervious not only to the whims of Wells Fargo, but to judicial discretion.

### 1. The Lender Must Strictly Comply with the Deed of Trust

Having established the terms of the contract, actions taken to enforce the Deed of Trust must conform precisely to the trust document – not substantially comply therewith.  Frazer v. Millington, 475 S.E.2d 811, 252 Va. 195 (Va., 1996). The Arizona Supreme Court, *en banc*, stated this principle as follows:

> A mortgage generally may be foreclosed only by filing a civil action while, under a Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of court with no necessity of judicial action. The Deed of Trust statutes thus strip borrowers of many of the protections available under a mortgage. Therefore, lenders must strictly comply with the Deed of Trust statutes, and the statutes and Deeds of Trust must be strictly construed in favor of the borrower.

In re Krohn, 203 Ariz. 205, 52 P.3d 774 (Ariz., 2002).  Wells Fargo, Freddie Mac and Plaintiff's fiduciary, SiW, argued, and the District Court ultimately agreed, that the notice substantially complied and the breach was not material – essentially nullifying the condition precedent Plaintiff seeks to enforce – that the notice *shall* advise her of the right to *bring a court action*.  The Virginia Supreme Court, without hesitation, and with two concurring opinions, stated that "[p]rohibiting a borrower

23

from bringing an action to enforce the conditions precedent in a deed of trust would nullify such conditions . . . To accept PHH's argument, we would have to rule that conditions precedent to foreclosure in deeds of trusts are nullities when the breach is by nonpayment.  Such a ruling would defy common sense." Mathews at 199-200. Similarly, to accept Wells Fargo's argument in the case *sub judice* would defy common sense.

Appllents relied heavily on Matanic v. Wells Fargo Bank, N.A., No. 3:12cv472, 2012 WL 4321634 (E.D. Va. Sept. 19, 2012), and similar opinions, stating such a breach could not be considered "material," which Virginia courts define as "a sfailure to do something that is so fundamental to the contract that a failure to perform the obligation defeats an essential purpose of the contract." Id. At 5.  The District Court expressed its disagreement with Matanic (J.A. 414, Court's 12b6 Memo Opinion at p. 12), but then ruleed otherwise after trial (J.A. 651).  The District Court's position is inconsistent with that of the Virginia Supreme Court, which has held "[T]he essential purposes of a deed of trust are two-fold: to secure the lender-beneficiary's interest in the parcel it conveys and to protect the borrower from acceleration of the debt and foreclosure on the securing property prior to the fulfillment of the conditions precedent it imposes. Mathews at 200.  If one of the "essential purposes" is to protect the borrower from acceleration and foreclosure *prior to fulfillment of the conditions precedent*, then it is clear that the requirement

– condition precedent - that the notice of the right to bring a court action that "shall" be given is an "essential purpose of the contract."  Further, the District Court's view is inconsistent with the Fourth Circuit, which stated "[L]enders are not favored creatures of the law, at least as compared to borrowers. They must dot the 'i's and cross the 't's."  <u>Williams v. First Fed. Sav. & Loan Ass'n</u>, 651 F.2d 910, 926 (4th Cir.1981).

> Whenever the thing that is wrong represents an attempted unfair advantage to the lender, the courts, not just in Virginia, but throughout the United States, seek to achieve justice by denying to the usually economically superior lender, with presumably the better bargaining position, other advantages in the package of provisions in the deed of trust concerning acceleration.

<u>Williams</u> at 925.

### 2. The [Lack of] Notice to File a Court Action

The notice(s) given by Wells Fargo inexplicably fail to advise of the right to bring a court action.  Why a Lender would "tweak" the language in such a manner is unknown.  Fortunately, Lenders are not favored creatures under the law; they must dot the I's and cross the t's.  As the contract unequivocally states, the notice "shall" advise the borrower of that right, the failure to give the notice clearly defeats an essential purpose of the contract, thus it is material.

### 3. Plaintiff's Default and Purported Inability to Cure is Irrelevant

The lender must comply with all conditions precedent, even if the borrower is in arrears. <u>Mathews</u> at 200.

> Because a deed of trust permits the trustee to sell the parcel to protect the interest of the lender-beneficiary upon the borrower's breach by non-payment, the fact of non-payment of the note does not "defeat [ ] an essential purpose of the contract." <u>Id.</u> To the contrary, lenders require deeds of trust precisely because they contemplate the possibility of non-payment. In other words, by its nature, the deed of trust is a contract in which the parties have agreed that material breach of the note by nonpayment will not deprive borrowers of their rights to enforce the conditions precedent."

<u>Id.</u>

Clearly, the fact Plaintiff was in default is irrelevant to her claims. With respect to Defendants persistent argument that she was unable to cure, thus no harm no foul, that is irrelevant. Assuming that allegation was supported by the evidence, which it was not, it is irrelevant if Plaintiff were unable to cure. <u>Everett v. Woodward</u>, 162 Va. 419, 426, 174 S.E. 864 (Va. 1934)(The appellees contend here that, because the appellants failed to tender the amount due under the deed of trust or allege in their bill their readiness and willingness to pay the amount due, they are not entitled to relief in a court of equity. They cite no case from this jurisdiction which sustains their view).

### 4. Post Sale action - no *bona fide* purchaser without notice

Plaintiff filed this action post-foreclosure sale. The purchaser at the sale was Wells Fargo, which assigned the "property" to Freddie Mac (Ps Trial Exhibit 4;

26

evidencing two transactions – trustee to Wells Fargo, then Wells Fargo to Freddie Mac - in one "deed" is a common tactic used to avoid state transfer taxes, as the second from Wells Fargo to Freddie Mac is relied on to invoke the tax exempt status of the latter).  While the true owner of the loan is unknown, even to Wells Fargo, Wells Fargo certainly had notice that *it* was not the proper party to foreclose, thus it, and Freddie Mac, its principal )also not the proper party to foreclose), were aware any foreclosure was void.  As noted by the Virginia Supreme Court,

> The trustee's power of sale is coupled with an interest; that is, he holds the legal title, while the grantor in the trust deed has the equitable title. If the trustee sells the property and, in so doing, materially departs from the authority and directions in the deed, nevertheless the legal title passes to the purchaser at the sale and the sale can be assailed only in a court of equity, where, as we have already seen, material departure from the provisions of the deed will vitiate the sale.

Everett at 426-427.  Of course, foreclosing at the request of one other than the secured party would be a material departure from the Deed of Trust's provisions, and vitiate the sale as the foreclosure was conducted fraudulently and without any authority to so act – the deed of trust only allows the lender to invoke the power of sale (Deed of Trust ¶22, and the word "may" gives sole discretion to per ¶16 of the Deed of Trust).

The above citation from Everett further supports the ability of this Court to, in equity, rescind the sale, as requested in Count IV based on fraud – foreclosing on

behalf of Wells Fargo when it is fraudulently claiming to be the secured party is grounds to rescind what should, under the law, clearly be a void foreclosure.

Further, the concept of *caveat emptor* indicates that setting aside a foreclosure sale is not a novel concept. Such sales are not invincible when improperly conducted. *See* <u>First Funding Corp. v. Birge</u>, 220 Va. 326, 333, 257 S.E.2d 861, 865 (1979) (trustees' acts were not in accord with deed of trust; held "void ab initio"); <u>Turk v. Clark</u>, 193 Va. 744, 749-750, 71 S.E.2d 172, 176 (1952) (trustee improperly advertised; sale held "wholly void"); <u>Wills v. Chesapeake Western Ry.</u>, 178 Va. 314, 320, 16 S.E.2d 649, 652 (1941) (trustee allegedly lacked authority; sale held "not a nullity," purchaser obtains legal title which may be set aside in equity)(cited by the District Court – see J.A. 419); <u>Everette</u> at 424, 866 (trustee improperly advertised; legal title had passed to purchaser, but sale was subject to being held "invalid" in equity).

## B. Brock Wiggins' testimony supports Mayo's claims

The only evidence in the record on which the Court could rely to establish the amount due on the Mayo Note and the almost incomprehensible testimony concerning whether Freddie Mac or some other entity owned the Mayo Note was the testimony of Wells Fargo's corporate representative, Brock Wiggins. He further testified that the loan was purchased from Wells Fargo by Freddie Mac, and that he has no idea whether or not Freddie Mac sold the loan to a securitized pool or other

entity, i.e. he has no idea, after reviewing millions of documents, whether Freddie Mac owned the loan, or some other entity owned the loan.

Mayo asks this Court to step back for a moment, and consider that servicers are foreclosing on Virginia residents with no idea who owns their loans. A curious as that sounds, it is a fact in this case.

## III.    Count II - Breach of Fiduciary Duty (ISSUE #2)

Where the deed of trust says only the lender may invoke the power of sale, that creates an implied duty to *not proceed to sale at the request of one other than the secured party* (See Wills cited by the District Court at J.A. 414). It is well-settled that SiW as trustees could only do with the trust property what the deed either in express terms *or by necessary implication* authorized them to do; they were required to execute the trust in strict compliance therewith. Schmidt & Wilson v. Carneal, 164 Va. 412, 180 S.E. 325, 326 (1935) (citations omitted)(emphasis added); also see Frazer, supra at p. 4 (that the appointment of a substitute trustee must conform precisely to the trust document) and Little v. Ward, 458 S.E.2d 586, 590, 250 Va. 3, 10  (Va., 1995)(when a substitute trustee of a trust is not validly appointed, a court properly strips the substitute trustee of its powers). "The general principle of [SiW's] duty [was] to act justly, impartially, and discreetly, without permitting [it]self to be swayed to the one side or the other by the suggestions or persuasions of either party. [They] ha[ve] been likened in this respect to the commissioner of the court of

equity." <u>Morriss v. Va. State Ins. Co.1</u>, 18 S.E. 843, 90 Va. 370 (Va., 1893)**.** That a fiduciary may not allow one who is *not* a party to the contract to enforce its terms is certainly implied, if not express, by its very nature.

If questions arise as to the existence of the default or the amount in default the trustee can seek the aid and direction of the court. <u>Bremer v. Bitner</u>, 44 Va. Cir. 505 (Va. Cir. Cr. 1996). Further, the trustee has an affirmative duty to seek assistance from the court to remove any cloud on title or if there is *any doubt* or uncertainty as to the debts secured *or the amounts thereof.* <u>Hudson v. Barham</u>, 101 Va. 63, 67, 43 S.E. 189, 190 (1903).

Mayo respectfully submits she adequately pled the duty was owed, that it was breached by SiW in pursuit of fees, and that for SiW to proceed to foreclosure sale when Wells Fargo was not the proper party was a clear breach of its duty given the Deed of Trust clearly states only the lender may invoke the power of sale.

### IV.    Count V - Abuse of Process (ISSUE #3)

Relying on the argument above concerning the disposal of her claims that Wells Fargo was not the proper party to invoke the power of sale, it becomes clear that Wells Fargo abused the non-judicial foreclosure process as a whip to force the Plaintiff to pay money that without question *was not owed to it*.

Foreclosure is an action to collect a debt. <u>Wilson v. Draper & Goldberg, P.L.L.C.</u>, 443 F.3d 373, 376 (4th Cir., 2006)(court disagreed that foreclosure by a

trustee under a deed of trust is not the enforcement of an obligation to pay money or a debt). Recordation of documents among the land records is the means of "prosecuting the proceedings" in a non-judicial jurisdiction, like Virginia. Conducting a foreclosure in the absence of default is not proper or in the regular use of the process. "It is the unlawful method by which the act is done that gives rise to the action, and the intentional use of this method constitutes malice in law." Glidewell v. Murray-Lacy, 124 Va. 563, 98 S.E. 665, 668 (1919). Defendant Wells Fargo maliciously misused and/or abused the non-judicial foreclosure process for an improper purpose, namely, to force the Plaintiff into foreclosure even though it was owed no money and was not the proper party to foreclose. As Wells Fargo was owed no money, foreclosure *by Wells Fargo* was not justified under the contract or at law and Plaintiff has properly plead a cause of action for abuse of process. Glidewell at 668 (1919)("if process is willfully used for a purpose not justified by the law, it is an abuse for which an action will lie… [w]hile it cannot he wrong to do a lawful act in a lawful way, it is a wrong to do a lawful act in an unlawful way"); *See* Mullins v. Sanders, 189 Va. 624, 54 S.E.2d 116, 122 (1949)("a whip to force the payment of an alleged indebtedness" is an example of an abuse of process).

## CONCLUSION

Appellants respectfully request this Court vacate the district court's order on the 12b6 Motion to Dismiss with respect to Counts I, II and V, and vacate the

judgment as to Counts I and IV, and remand this case for further proceedings consistent with the opinion of this Court.

Respectfully Submitted,

BONNIE J. MAYO

By Counsel,

THE BROWN FIRM PLLC


By: ___/s/_____
      Christopher E. Brown
      VSB#39852
      526 King St., Suite 207
      Alexandria, VA 22314
      703-924-0223
      Fax 703-997-2362
      cbrown@brownfirmpllc.com

## REQUEST FOR ORAL ARGUMENT

Bonnie J. Mayo respectfully requests Oral Argument and believes that such will assist this Court in its consideration of these issues.

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P.28.1 (e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains 8168 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using *Microsoft Word 2007* in *14pt Times New Roman*; *or*

[ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: June 1, 2015          _____/s/_____
                             Christopher E. Brown, Esq. VSB#39852
                             The Brown Firm PLLC
                             526 King Street, Suite 207
                             Alexandria, VA 22314
                             Tel: 703.924.0223
                             Fax: 703.997.2362
                             cbrown@brownfirmpllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of June, 2015, I electronically filed Appellants' Initial Brief using the Court's CM/ECF system, which served electronic copies of the Brief on counsel of record who have consented to electronic service.

_____/s/_____
Christopher E. Brown, Esq. VSB#39852
The Brown Firm PLLC
526 King Street, Suite 207
Alexandria, VA 22314
Tel: 703.924.0223
Fax: 703.997.2362
cbrown@brownfirmpllc.com